FILED
CLERK, U.S. DISTRICT COURT
JUL - 5 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___rsm___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>KENNETH IWAMASA,<br><br>          Defendant. | CR No. **2:24-CR-00408-JAK**<br><br>I N F O R M A T I O N<br><br>[21 U.S.C. § 846: Conspiracy to Distribute Ketamine Resulting in Death and Serious Bodily Injury] |

The United States Attorney charges:

[21 U.S.C. § 846]

A.   INTRODUCTORY ALLEGATIONS

At all relevant times to this Information:

1.   Defendant KENNETH IWAMASA was a resident of Los Angeles County and employed as the live-in personal assistant to Victim M.P. In this role, defendant IWAMASA had various responsibilities related to Victim M.P.'s medical care, including coordinating medical appointments and taking steps to ensure that Victim M.P. took the medication that Victim M.P. was lawfully prescribed by treating physicians.

2.   Defendant IWAMASA was aware that Victim M.P. had a history of drug abuse and addiction, and that Victim M.P. had sought on

multiple occasions assistance to treat his drug addiction and to maintain his sobriety.

3. Co-Conspirator 1 was a medical doctor known as "Dr. P," and was a resident of Santa Monica, California.

4. Co-Conspirator 2 was a resident of Hawthorne, California.

B. <u>OBJECT OF THE CONSPIRACY</u>

Beginning on a date unknown and continuing until at least on or about October 28, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant IWAMASA conspired with others known and unknown to the United States Attorney, to knowingly and intentionally distribute ketamine, a Schedule III controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(E)(i).

The distribution of said ketamine that was the object of the conspiracy resulted in the death and serious bodily injury of Victim M.P.

C. <u>MANNER AND MEANS OF THE CONSPIRACY</u>

The object of the conspiracy was to be accomplished, in substance, as follows:

1. Defendant IWAMASA would communicate with other co-conspirators, including Co-Conspirators 1 and 2, about purchasing ketamine to distribute to Victim M.P.

2. Defendant IWAMASA would meet with co-conspirators, including Co-Conspirators 1 and 2, to purchase ketamine for Victim M.P.

3. Knowing that defendant IWAMASA did not have medical training nor experience administering and/or treating persons who were under the influence of controlled substances, Co-Conspirator 1

would teach defendant IWAMASA how to inject Victim M.P. with ketamine.

4.    At Victim M.P.'s request, defendant IWAMASA would inject Victim M.P. with the ketamine defendant IWAMASA obtained from Co-Conspirators 1 and 2.

5.    On October 28, 2023, defendant IWAMASA injected Victim M.P. with the ketamine defendant IWAMASA received from Co-Conspirator 2, resulting in the death and serious bodily injury of Victim M.P.

D.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant IWAMASA and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On September 30, 2023, defendant IWAMASA and Victim M.P. met with Co-Conspirator 1, who went by the name of "Dr. P.," at a residence belonging to Victim M.P., in Los Angeles County, for the purpose of obtaining ketamine from Co-conspirator 1 for Victim M.P.'s use.

Overt Act No. 2:   On September 30, 2023, after injecting Victim M.P. with two shots of ketamine, Co-Conspirator 1 instructed defendant IWAMASA how to administer ketamine via syringe to Victim M.P., including where to make injections on Victim M.P.'s body, and left behind at least one vial of ketamine and multiple syringes.

Overt Act No. 3:   On September 30, 2023, defendant IWAMASA paid Co-Conspirator 1 approximately $4,500 for the ketamine.

Overt Act No. 4:   On October 2, 2023, in response to a text message, in coded language, from defendant IWAMASA requesting to buy

8 vials of ketamine, "Want to end up with bottles of dr pepper, not just 8 sessions," Co-Conspirator 1 responded that he "Understood."

 Overt Act No. 5: On or about October 2, 2023, defendant IWAMASA purchased ketamine lozenges from Co-Conspirator 1 for approximately $2,000.

 Overt Act No. 6: On October 4, 2023, defendant IWAMASA sent Co-Conspirator 1 text messages stating, in coded language, that he had successfully injected Victim M.P. and that he needed to buy more vials of ketamine: "I will need to get more cans of dr pepper from you today, I can come to you to make it convenient."

 Overt Act No. 7: On October 4, 2023, in response to defendant IWAMASA's text messages requesting to purchase ketamine "now," Co-Conspirator 1 advised that he was "currently retrieving 4 bottles," which he was getting from his source.

 Overt Act No. 8: On October 4, 2023, Co-Conspirator 1 injected Victim M.P. with ketamine and in addition sold defendant IWAMASA multiple vials of ketamine.

 Overt Act No. 9: On October 6, 2023, in response to defendant IWAMASA advising Co-Conspirator 1 that he needed more ketamine because he only had "1 left," Co-Conspirator 1 traveled to Victim M.P.'s residence, injected Victim M.P. with ketamine, and sold one or more vials of ketamine to defendant IWAMASA for a cash payment.

 Overt Act No. 10: On October 7, 2023, defendant IWAMASA sent text messages to Co-Conspirator 1 seeking more ketamine and asked if he could pay with "something besides cash" because "[i]ts hard to get to the bank on the fly with all that's going on which happens so fast now."

<u>Overt Act No. 11</u>:  On October 7, 2023, at approximately 11:29 p.m., and in response to text messages from defendant IWAMASA, Co-Conspirator 1 confirmed that he had two bottles of ketamine to sell to defendant and agreed to meet in Santa Monica, California, stating: "Im at third street promenade now … If [y]ou would like to meet now."

<u>Overt Act No. 12</u>:  On October 7, 2023, at approximately 11:47 p.m., defendant IWAMASA told Co-Conspirator 1 that he sent $3,000 by electronic payment and that "im b ringing 3 more leaving now."

<u>Overt Act No. 13</u>:  On October 8, 2023, at approximately 12:30 a.m., Co-Conspirator 1 sold defendant two vials of ketamine for $6,000.

<u>Overt Act No. 14</u>:  On October 10, 2023, defendant IWAMASA drove Victim M.P. to meet with Co-conspirator 1 in a public parking lot in Long Beach, California, where Co-Conspirator 1 was given cash, as a partial payment, for injecting Victim M.P. with ketamine in the back of the car and for providing defendant IWAMASA with additional vials of ketamine.

<u>Overt Act No. 15</u>:  On October 10, 2023, defendant IWAMASA sent a text message to Co-Conspirator 2 seeking to purchase ketamine, stating: "How much do you want per bottle and what is the nice tip you want."

<u>Overt Act No. 16</u>:  On October 10, 2023, in response to the text message referenced in <u>Overt Act No. 15</u>, Co-Conspirator 2 stated, "perfect- and ill bring to you" and "Getting price now. I need some upfront to pay when I pick up. And rest when I deliver."

<u>Overt Act No. 17</u>:  On October 10, 2023, Co-Conspirator 2 also told defendant IWAMASA via text messages that he could obtain 10ml vials of ketamine for $300 and requested a $1,000 brokering fee.

<u>Overt Act No. 18</u>:  On October 12, 2023, referring to the remaining payment from the transaction referred to in <u>Overt Act No. 14</u>, defendant IWAMASA texted Co-conspirator 1, "I have your cash sorry for the wait," and asked to purchase additional ketamine.

<u>Overt Act No. 19</u>:  On October 12, 2023, defendant IWAMASA requested that Co-Conspirator 1 come to Victim M.P.'s residence to inject Victim M.P. with ketamine, even though, as defendant IWAMASA knew, Victim M.P. had just received a ketamine infusion treatment earlier that day from a medical doctor at the doctor's office.

<u>Overt Act No. 20</u>:  On October 12, 2023, after Co-Conspirator 1 administered a large dose of ketamine to Victim M.P. which caused an adverse medical reaction, including a significant spike to Victim M.P.'s systolic blood pressure and causing him to freeze up, such that Victim M.P. could not speak or move, Co-conspirator 1 stated to defendant IWAMASA something to the effect of: "let's not do that again."

<u>Overt Act No. 21</u>:  On October 13, 2023, Co-Conspirator 2 drove to Victim M.P.'s residence and delivered a sample vial of ketamine to defendant IWAMASA in exchange for payment.

<u>Overt Act No. 22</u>:  On October 13, 2023, in response to defendant IWAMASA asking Co-Conspirator 2 how many bottles of ketamine Co-Conspirator 2 could obtain, Co-Conspirator 2 stated, "As many as u want" and "Let me know how many ... and I'll confirm what [Co-Conspirator 2's ketamine source] can get. But as of now," the ketamine source "can fill any order."

<u>Overt Act No. 23</u>:  On October 13, 2023, in response to the text messages referenced in <u>Overt Act No. 22</u>, defendant IWAMASA told Co-

Conspirator 2 he would purchase "25 vials $5500 @220 +500 for you for logistics."

<u>Overt Act No. 24</u>:   On October 14, 2023, Co-Conspirator 2 drove to Victim M.P.'s residence and sold defendant IWAMASA 25 vials of ketamine for approximately $6,000.

<u>Overt Act No. 25</u>:   On October 23, 2023, defendant IWAMASA sent a text message to Co-Conspirator 2 requesting to purchase more ketamine, stating: "Can we do same as last time again over next 2 days?"

<u>Overt Act No. 26</u>:   On October 23, 2023, in response to the text message referenced in <u>Overt Act No. 25</u>, Co-Conspirator 2 confirmed he could obtain more ketamine, stating: "It will be same product. You want same amount? Put the 5500 together asap and ill come get it as soon as possible to get it all done tonight."

<u>Overt Act No. 27</u>:   On October 23, 2023, Co-Conspirator 2 traveled to Victim M.P.'s residence at approximately 8 p.m. and picked up approximately $6,000 in cash from defendant IWAMASA, which would be used to pay Co-Conspirator 2's ketamine source for additional ketamine.

<u>Overt Act No. 28</u>:   On October 24, 2023, Co-Conspirator 2 texted defendant IWAMASA that the cash for the ketamine purchase was on its way to Co-Conspirator 2's source of ketamine: "It's on its way to our girl. I should have an ETA anytime soon."

<u>Overt Act No. 29</u>:    On October 24, 2023, Co-Conspirator 2 traveled to Victim M.P.'s residence with at least 25 vials of ketamine which he delivered to defendant IWAMASA.

<u>Overt Act No. 30</u>:   On October 24, 2023, defendant IWAMASA administered at least 6 shots of ketamine to Victim M.P.

  Overt Act No. 31: On October 25, 2023, defendant IWAMASA administered at least 6 shots of ketamine to Victim M.P.

  Overt Act No. 32: On October 26, 2023, defendant IWAMASA administered at least 6 shots of ketamine to Victim M.P.

  Overt Act No. 33: On October 27, 2023, defendant IWAMASA administered at least 6 shots of ketamine to Victim M.P.

  Overt Act No. 34: On October 27, 2023, Co-Conspirator 1 offered to sell additional ketamine to defendant IWAMASA to be distributed to Victim M.P.: "Hi. I know you mentioned taking a break. I have been stocking up on the meanwhile. I am not sure when you guys plan to resume but in case its when im out of town this weekend I have left supplies with a nurse of mine," and followed up in a later message: "I can always let her know the plan. I will be back in town Tuesday."

///

///

<u>Overt Act No. 35</u>:  On October 28, 2023, defendant IWAMASA administered at least 3 shots of ketamine to Victim M.P., resulting in the death and serious bodily injury of Victim M.P.

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

IAN V. YANNIELLO
Assistant United States Attorney
Chief, General Crimes Section

HAOXIAOHAN CAI
Assistant United States Attorney
Major Frauds Section