BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, National Security Division
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
Major Frauds Section
1500/1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:      (213) 894-3667/0762
Facsimile:      (213) 894-0141
E-mail:   Ian.Yanniello@usdoj.gov
          Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-408-SPG |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO USPO'S ADDENDUM TO THE PRESENTENCE REPORT (DKT. 44) AND DEFENDANT KENNETH IWAMASA'S REPLY IN SUPPORT OF SENTENCING POSITION (DKT. 45); EXHIBITS E-F |
| v. | |
| KENNETH IWAMASA, | |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello and Haoxiaohan Cai, hereby files its response to the United States Probation and Pretrial Services Office ("USPO")'s Addendum To The Presentence Report ("PSR") (Dkt. 44) and Defendant Kenneth IWAMASA's Reply in Support of Sentencing Position (Dkt. 45.)

//

//

//

This position is based upon the attached memorandum of points and authorities, Exhibits E-F, which are a report of an interview with third-party B.M., and a proffer report for co-conspirator Erik FLEMING, respectively, that have been concurrently filed pending sealing approval, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 23, 2026                    Respectfully submitted,

                                       BILAL A. ESSAYLI
                                       First Assistant United States
                                       Attorney

                                       IAN V. YANNIELLO
                                       Assistant United States Attorney
                                       Chief, National Security Division


                                             /s/
                                       IAN V. YANNIELLO
                                       HAOXIAOHAN CAI
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

2

## I.   INTRODUCTION

The government files its response to the USPO's Addendum to the PSR (Dkt. 44) to respectfully disagree with the USPO's evaluation of the government's requested enhancements, and to respond to defendant's Reply In Support Of Sentencing Position ("Reply") (Dkt. 45).

## II.   Defendant Obstructed Justice

The two-level obstruction enhancement under U.S.S.G. § 3C1.1 should be applied, and defendant appears to agree as well: although defendant filed his Reply objecting to the abuse of trust enhancement, his Reply does not dispute the application of the obstruction enhancement.

As an initial matter, the government submits that the record contains sufficient evidence of defendant's obstruction.  When homicide detectives interviewed defendant on the day of Mr. Perry's death, defendant repeatedly lied to cover up his involvement in the conspiracy to distribute ketamine to Mr. Perry and to prevent law enforcement from seizing important evidence.  *See* Dkt. 39, Ex. A (defendant (1) withheld any reference to ketamine, (2) omitted facts related to co-conspirators Salvador PLASENCIA and Erik FLEMING, even though PLASENCIA should have been disclosed on the list of doctors, (3) and left out, as part of the events leading up to Mr. Perry's death, the fact that defendant personally injected him with three shots of ketamine.)

Defendant's obstruction continued through January 2024, when he lied to investigators once again about material matters.  Dkt. 39, Ex. B.  In that interview, defendant lied about the following: (1) that the reason why officers did not find ketamine bottles at Mr.

Perry's house on the day of his death was because Mr. Perry himself had hidden them, (id. at 2) when, as defendant knew, he had instructed a third party, B.M., to dispose of the ketamine vials; (2) Mr. Perry injected himself with multiple doses of ketamine, when, as defendant knew, it was he who would administer shots of ketamine (id.); that Mr. Perry had not used ketamine before defendant left the house on October 28, 2023, when, as defendant knew, defendant had just given Mr. Perry multiple shots over the course of a few hours (id. at 3).

However, to avoid any ambiguity, the government hereby submits additional evidence to establish defendant caused the destruction of significant evidence that was located inside Mr. Perry's home on the day of his death -- including vials of ketamine and syringes, and obstructed access to Mr. Perry's digital devices.  (See Exs. E, F (Filed Under Seal).)

After Mr. Perry's death, B.M. arrived to Mr. Perry's house and was directed by defendant to shred two things: a piece of paper for a prescription of ketamine troches[1] and a handwritten note which identified Salvador Plasencia as a source of ketamine.  (Ex. E).  In addition, B.M. and defendant collected glass vials and syringes for disposal and ensured that they were destroyed. (Id.) Thus, defendant did not only direct a third party to spoliate evidence, but also

---

[1] This was a copy of the V.B. prescription of ketamine troches that co-conspirator PLASENCIA obtained from co-conspirator CHAVEZ, which was illegally provided by PLASENCIA to defendant for Mr. Perry's use.  See, e.g., United States v. Mark Chavez, 24-CR-492-SPG, Dkt. 3 at 11-13 (Plea Agreement); United States v. Salvador Plasencia, 24-CR-236-SPG(A)-2, Dkt. 30 at 6 (First Superseding Indictment showing photo of the fraudulent V.B. ketamine prescription).

2

succeeded in physically destroying vials of ketamine, which officers were never able to recover from Mr. Perry's house.

Defendant himself confirmed to co-conspirator FLEMING that he had destroyed evidence.  On October 30, 2023, two days after Mr. Perry's death, defendant spoke over the phone with FLEMING and told him that defendant cleaned up the scene, including the bottles and syringes.  (Ex. E at 4.) Defendant assured FLEMING that law enforcement officers only seized Mr. Perry's prescription medication, but didn't find anything else (id.), like the illegal vials of ketamine that he procured and helped to destroy.  Defendant also said he "deleted everything" and changed the passwords of Mr. Perry's digital devices.  (Id. at 5.)

**III. Defendant Abused A Position of Trust**

The two-level enhancement for abuse of trust, U.S.S.G. § 3B1.3, applies as well.

The USPO's objection to this enhancement appears to be that defendant's title is merely that of an "assistant," and that this "assistant role" did not give him substantial discretion.  (Dkt. 44 at 2.) However, courts have repeatedly emphasized that that a defendant's title is not determinative, and even jobs with less apparent discretion can give rise to the enhancement.  See, e.g., United States v. Morris, 350 F.3d 32, 38 (2d Cir. 2003) (collecting cases, rejecting argument that defendant's "entry-level" position was too "menial" to warrant enhancement, and finding instead that defendant's position as home health aide gave her continuous access to elderly victims and relatively unsupervised discretion over their daily care).  Here, where defendant was trusted with Mr. Perry's medical care, had continuous access to Mr. Perry, and could and did

3

use his live-in position to destroy vials of ketamine and tamper with digital evidence on Mr. Perry's devices, defendant has used his position to "mak[e] the detection of the offense or the defendant's responsibility for the offense more difficult," and the enhancement applies.  U.S.S.G. § 3B1.3, Application Note 1.

Defendant's principal argument against this enhancement is that the facts in this case are dissimilar to those in Bradshaw and Zamarripa.[2] See Dkt. 45 at 3. The argument is that Bradshaw involved a defendant who committed crimes against and unknown to her victim, and here, defendant was acting at the consent and direction of Mr. Perry.  Id. However, as Zamarripa makes clear, the enhancement construes the trust placed in defendant broadly --- it includes the trust placed in defendant by others, like the family that trusted the defendant to care for and oversee the ultimate victim.  See United States v. Zamarripa, 905 F.2d 337, 340 (10th Cir. 1990).  Here, defendant abused not only the Mr. Perry's trust, but also that of Mr. Perry's family, who trusted defendant and relied on him to report any potential relapses.[3]

**IV.  Defendant's Expert Forensic Report Does Not Exonerate Him**

Defendant's Reply also faults the government for not crediting the defense-commissioned 'expert forensic report.'  However, the report itself actually cuts against defendant.  The report does not

---

[2] Defendant's Reply made additional arguments that were later withdrawn by counsel.  Compare Dkt. 45 at 2-3 with Dkt. 53 at 2.

[3] See Dkt. 42-3 (Letter of Suzanne Morrison) ("We trusted Kenny. Kenny's most important job – by far – was to be my son's companion and guardian in his fight against addiction. His number one responsibility – ensure that Matthew remained what he wanted to be: drug free. Kenny knew, should he feel unduly pressured, that with one phone call to any number of the people in Matthew's orbit, reinforcements would be on the way, and his job would be safe.")

4

allege that defendant was plagued by any specific mental health diagnoses at the time he committed the crimes, except that defendant had a co-dependent personality.  Instead, it paints a fairly sanguine picture of defendant's stable upbringing, and notes that defendant never even sought out mental health treatment prior to his criminal conduct.  These aspects of defendant were largely reflected in the PSR and do not change the government's view of his conduct.

What's more, the report details additional aggravating facts, including that defendant had been well aware of Mr. Perry's addiction struggles --- for decades.  During their decades-long acquaintance, defendant "developed a good understanding of MP's addictions . . . He was familiar with MP's hospital admission at rehabilitation centers, his ongoing treatments," and a 2018 hospitalization that was related to drug use complications.  By highlighting the clarity with which defendant saw Mr. Perry's addiction prior to injecting him with illegal ketamine until his death, the report actually undermines defendant's bid for sentencing leniency.